ESTATE OF DOLLIE B. MURRAY, DONALD G. MURRAY, EXECUTOR, AND DONALD G. MURRAY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Murray v. Commissioner
Docket No. 8683-85.
United States Tax Court
T.C. Memo 1987-602; 1987 Tax Ct. Memo LEXIS 601; 54 T.C.M. (CCH) 1267; T.C.M. (RIA) 87602; December 7, 1987. *601 Donald G. Murray, pro se. Nadine M. Alexander, William S. Garofalo, and James E. Hardaker, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows: Additions to Tax
Section
Section
Section
Year
Deficiency
6653(a)(1) [1]
6653(a)(2)
6659(a)
1973
$    654
-
-
-
1974
633
$  32
-
-
1976
7,187
-
-
-
1977
4,477
224
-
-
1980
12,987
649
-
-
1981
9,453
473
*
$ 2,836
1982
2,073
104 **
364
The issues for determination are whether the statute of limitations bars assessment of the deficiencies for 1973, 1974, 1976, and 1977 and whether petitioners are entitled to deductions and investment tax credits in 1980, 1981, and 1982 in relation to a Picasso reproduction purchased from Jackie Fine Arts. FINDINGS OF FACT
*602 Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Donald G. Murray and Dollie B. Murray (petitioners) were residents of Huntsville, Alabama, at the time they filed their petition. Petitioners filed joint Federal income tax returns, Forms 1040, for each of the years in issue.
Cotapaxi
On Schedule E of petitioners' Form 1040 for 1976, they claimed a deduction for partnership loss from "Cotapaxi lode mining venture" (Cotapaxi) in the amount of $ 17,385. On Schedule E of their return for 1977, they claimed a loss from Cotapaxi in the amount of $ 10,676. They claimed carrybacks to and refunds for 1973 and 1974 in relation to Cotapaxi. On December 13, 1979, petitioners signed Form 872 extending to April 15, 1981, the time to assess income taxes for 1976. On February 19, 1981, petitioners signed Form 872-R extending to April 15, 1982, the time to assess income taxes due for 1976, but restricting any such assessment to adjustments relating to a partnership interest. Also on February 19, 1981, petitioners executed Form 872-R extending to April 15, 1982, the time for assessment of taxes for 1977. On July 10, 1981, petitioners *603 signed Form 2848, granting power of attorney to John R. Wynn (Wynn) for the "audit and appeal of proposed deficiency for tax years ending December 31, 1973, 1976 and 1977." The form was signed by Wynn on July 9, 1981, and received by the Internal Revenue Service on July 10, 1981. On November 16, 1981, Wynn signed separate Forms 872-A, Special Consent to Extend the Time to Assess Tax, for each of the years 1976 and 1977. Each of the Forms 872-A provided that the tax for the affected year could be assessed on or before the ninetieth day after termination of the consent in the manner set forth in the form, to wit, by receipt by the Internal Revenue Service of a Form 872-T from the taxpayers or by mailing of a Form 872-T or a notice of deficiency by the Internal Revenue Service. The Forms 872-A included the following typewritten language: [1976] The amount of any deficiency assessment is to be limited to that resulting from any adjustment to: (a) the taxpayer's distributive share of any item of income, gain, loss, deduction, or credit of, or distribution from any partnership (or any organization treated by the taxpayer as a partnership on the taxpayer's tax return); (b) the *604 tax basis of the taxpayer's interest(s) in such partnership(s) or organization(s) treated by the taxpayer as a partnership; and (c) any gain or loss (or the character or timing thereof) realized upon the sale or exchange, abandonment or other disposition of taxpayer's interest in such partnership(s) or organization(s) treated by the taxpayer as a partnership; including any consequential changes to other items based on such adjustment. [1977] The amount of any deficiency assessment is to be limited to that resulting from any adjustment to: (1) Items affected by continuing tax effects caused by adjustments to any prior tax return; (2)(a) the taxpayer's distributive share of any item of income, gain, loss, deduction, or credit of, or distribution from any partnership (or any organization treated by the taxpayer as a partnership on the taxpayer's tax return); (b) the tax basis of the taxpayer's interest(s) in such partnership(s) or organization(s) treated by the taxpayer as a partnership; and (c) any gain or loss (or the character or timing thereof) realized upon the sale or exchange, abandonment or other disposition of taxpayer's interest in such partnership(s) or organization(s) *605 treated by the taxpayer as a partnership; including any consequential changes to other items based on such adjustment. When petitioners learned that the Forms 872-A had been executed by Wynn, they wrote a letter to the Internal Revenue Service purporting to terminate Wynn's power of attorney and requesting new forms relating to the Cotapaxi partnership issues only. Petitioners did not receive any answer to their letter. Despite repeated demands during several telephone conversations with representatives of the Internal Revenue Service, petitioners were unsuccessful in obtaining Forms 872-R. Ultimately, in 1984, they were mailed some Forms 872-T. The adjustments in the statutory notice for 1973, 1974, 1976, and 1977 are limited to Cotapaxi partnership items.
Jackie Fine Arts
During 1980, Donald G. Murray (petitioner) was self-employed as a financial consultant and as a salesman for Jackie Fine Arts (Jackie). Petitioner also acquired a Picasso package identical to those described in Rose v. Commissioner,88 T.C. 386, 387-393 (1987). In 1986, petitioner filed a lawsuit against Jackie. A major part of the suit was to obtain commissions due based on sales *606 of Picasso packages to other individuals. In the spring of 1987, a judgment of $ 68,000 was awarded in favor of petitioner against Jackie. About 2 months after the trial in which the judgment was awarded, petitioner received the signed limited editions that were part of the Picasso package. In about August 1987, he received unsigned posters. At the time of trial of this case in September 1987, he had sold one Picasso reproduction and had orders for four more.
Procedural History
At the time of filing their petition on April 11, 1985, petitioners designated that trial of this case be held at Newark, New Jersey. By notice served November 20, 1986, trial was set in Newark on April 20, 1987. A Standing Pre-Trial Order directing, among other things, a stipulation of facts, exchange of documents, and filing of a trial memorandum 15 days before the first day of trial, was served. Thereafter, on the basis of petitioners' informal request, the case was continued to the Newark session commencing September 28, 1987, and the parties were again ordered to comply with the Standing Pre-Trial Order. On May 29, 1987, respondent filed a Motion to Include Case in the Jackie Fine Arts *607 Project. Other Jackie Fine Arts cases had theretofore been set for trial in New York City, New York, on September 14, 1987. Respondent's said motion was granted, and by order dated July 17, 1987, the case was calendared for trial in New York City on September 14, 1987. On August 3, 1987, respondent filed a Motion to Compel Response to Respondent's Request for Production of Documents and Things and a Motion for Order to Show Cause Why Proposed Stipulations Should Not be Deemed Admitted. By order dated August 4, 1987, petitioners were required to comply by August 31, 1987, with respondent's request for production of documents, which had been served on July 1, 1987. Petitioners were also ordered to respond by August 24, 1987, to the Motion for Order to Show Cause Why Proposed Stipulations Should Not be Deemed Admitted. Petitioners never complied with the Court's Standing Pre-Trial Order or with the order dated August 4, 1987. Instead, on August 18, 1987, petitioner sent a letter to the Court stating that he was unable to appear for trial on September 14 because of health; that his Jackie records were unavailable because of his case against Jackie Fine Arts; that he no longer *608 had legal counsel and could not afford any; and that his financial condition prevented his "fighting" this case. The letter was filed as a motion for continuance, which was denied. After he received his Picasso limited editions in 1987, petitioner refused to produce a sample to respondent for inspection unless respondent's representative would sign a receipt acknowledging that the sample had a value of $ 500. On September 8, 1987, respondent's counsel requested a conference call because of his inability to prepare for trial of the value of the Picasso package. During a conference call on September 9, the Court learned for the first time that petitioner was claiming that the statute of limitations barred assessment of the deficiencies determined for years prior to 1980. (Petitioner did not allege the bar of the statute of limitations in the petition.) The Court advised petitioner that the Jackie issue had to be disposed of by the following week, along with the other Jackie cases then set for trial, but that if the Jackie issue were conceded, the case might be reset at a subsequent session in Birmingham, Alabama, for trial of the statute of limitations issue. (The Court does not *609 hold sessions in Huntsville, Alabama.) Petitioner declined the invitation. OPINION Petitioner has the burden of proving that respondent's determinations in the statutory notice are erroneous. Welch v. Helvering,290 U.S. 111 (1933); New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934); Neely v. Commissioner,85 T.C. 934, 947-950 (1985). Rule 142(a), Tax Court Rules of Practice and Procedure.
The only evidence received at trial consisted of petitioners' tax returns, the forms and correspondence relating to consents to extend the statute of limitations, and the testimony of petitioner and two Internal Revenue Service employees who had been brought from Alaska to New York by respondent as a courtesy to petitioner. No documentary evidence was offered with respect to petitioner's transaction with Jackie. Petitioner claims that the statute of limitations bars assessment of the deficiencies for 1976 and 1977, because he wrote a letter terminating the power of attorney previously granted and demanding Forms 872-R, but the Internal Revenue Service never complied with his demands. Petitioner testified that, if he had received Forms *610 872-R, he would have executed them and thereby extended the time for assessment with respect to the Cotapaxi adjustments. Petitioner concedes that he was not harmed by the failure to send the Forms 872-R inasmuch as the Form 872-A executed by his representative contained a restriction to partnership items, and only those items are the subject of the statutory notice. He has not shown that he relied to his detriment on any act or omission of the Internal Revenue Service. Similarly, he has not shown that the Forms 872-A were ineffective of that he ever properly terminated the extensions granted by his authorized agent. Thus there is no basis for an estoppel against respondent or any other relief. Petitioner has otherwise conceded that the deficiencies determined with respect to Cotapaxi are appropriate; therefore respondent's determinations for 1973, 1974, 1976, and 1977 must be sustained. Although petitioner had with him at the trial copies of certain documents relating to his dealings with Jackie, he did not offer any of them in evidence. He stated that he did not have any documents concerning sales, marketing information, manufacturing information, or appraisals relating *611 to his Picasso packages. He testified generally in an attempt to distinguish his case from Rose v. Commissioner,88 T.C. 386 (1987), in which we found that purchase of a Picasso package from Jackie was without economic substance and did not support any tax deductions or credits. Petitioner claimed that he intended to make a profit with respect to the Picasso reproductions; that he was the only salesman who ever sued Jackie to obtain his reproductions; that he had met with Jackie's appraisers, F. Peter Rose and Sigmund Rothschild, prior to acquiring his Picasso package; that he sent letters to approximately 380 interior designers in an attempt to market the Picassos but received only one sale from the mailings; and that he had a contract with Noah Graphics of Chicago. Petitioner did not, however, specify the time that any of these events occurred, and he presented no corroborating evidence. Petitioner's failure to produce the documentary evidence supports an inference that the evidence, if it exists, would not be favorable to him. Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947). *612 In any event, he has totally failed to show facts that would support a different result than the one reached in Rose v. Commissioner, supra. Although he denied that his acquisition of a Picasso package was tax motivated, he presented no evidence from which we could conclude that his transaction with Jackie had economic substance. He presented no evidence of arm's-length price negotiation with Jackie or of an actual program for commercial exploitation of the Picasso reproductions. We cannot even ascertain from the record what he purportedly paid to Jackie. The statutory notice refers to a nonrecourse note in the amount of $ 240,000, and petitioner does not dispute that characterization. Whether or not, as in Rose, there was also "recourse" financing, there is no evidence that any amount was or ever would be paid. The reasonable inference from his failure to obtain any product prior to 1987 is that his reproduction master, as defined in Rose v. Commissioner,88 T.C. at 417 was not placed in service during the years in issue. Petitioner has totally failed to satisfy his burden of proving respondent's determinations erroneous. Decision *613 will be entered for the respondent.
Footnotes
1. Except as otherwise noted, all section references are to the Internal Revenue Code as amended and in effect during the years in issue. * 50 percent of the interest due on $ 9,453. ** 50 percent of the interest due on $ 2,073. ↩